**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JEROMY KENDALL,
an individual,

                                        Case No.:

      Plaintiff,

v.

LENDINGPOINT LLC,
a foreign limited liability company,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation, and
TRANS UNION LLC,
a foreign limited liability company,

      Defendants.

_____/

## COMPLAINT

**COMES NOW**, Plaintiff, JEROMY KENDALL (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, LENDINGPOINT LLC (hereinafter, "LendingPoint"), EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian"), and TRANS UNION LLC (hereinafter, "Trans Union") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.    This is an action brought by an individual consumer for damages for LendingPoint's violations of the Fair Credit Reporting Act, 15 United States Code,

Section 1681 et seq. (hereinafter, the "FCRA") wherein LendingPoint improperly credit-reported and subsequently verified objectively-inaccurate information related to a loan account allegedly owed to LendingPoint on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Transunion and Experian.

2.    More specifically, LendingPoint continued to inaccurately report the account after Plaintiff disputed LendingPoint's reporting of such erroneous information directly to Transunion and Experian.

3.    Furthermore, this is an action for damages for Transunion and Experian's violations of the FCRA wherein Transunion and Experian continued to incorrectly report such account as a derogatory, negative, or adverse account with late payment information, despite Plaintiff's repeated disputes to Transunion and Experian explaining and proving that such account should be promptly deleted from Plaintiff's credit file and credit reports.

## **JURISDICTION, VENUE & PARTIES**

4.    Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq*.

5.    Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

6.    Venue is proper in this District as the acts and transactions described

herein occur in this District.

7.    At all material times herein, LendingPoint is a foreign limited liability company existing under the laws of the State of Delaware with its principal place of business located at 1201 Roberts Blvd NW Ste 200, Kennsaw, GA 30144 that regularly does business within Brevard County, Florida, where the causes of action herein accrued.

8.    At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

9.    At all material times herein, Transunion is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

10.    Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

11.    Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible*

*accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

12.    Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge—and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

13.    Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer.  *Id.* at § i(a)(4).

14.    Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation.  *Id.* at § i(a)(5).

15.    Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or

accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

16.    Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

17.    Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable

attorneys' fees.  *Id.* at § o.

## **GENERAL ALLEGATIONS**

18.     At all material times herein, Plaintiff is an alleged "consumer" or "debtor" as defined by the FCRA, Section 1681a(c) because he is an individual and was allegedly obligated to pay a debt.

19.     At all material times herein, LendingPoint, itself and through its subsidiaries, regularly services consumer credit and credit-reports information associated with the same in Brevard County, Florida.

20.     At all material times herein, LendingPoint is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

21.     At all material times herein, LendingPoint reports information concerning a closed consumer loan account to Transunion and Experian including but not limited to, a tradeline account referenced by account number beginning LAI0074- (hereinafter, the "Account").

22.     At all material times herein, Transunion and Experian are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Transunion and Experian each disburse such consumer reports to

third parties under contract for monetary compensation.

23.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

24.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

## TERMINATION OF THE DEBT

25.     During or about January 2023, Plaintiff obtained an unsecured loan from LendingPoint (i.e. the "Account") to be paid in monthly installments each month pursuant to the lending agreement.

26.     Plaintiff made each monthly payment timely and in full.

27.     More specifically, on or about December 20, 2023 Plaintiff made full and timely payment on the Account via the LendingPoint website in the amount of $351.99.

28.     Likewise, on or about January 8, 2024, Plaintiff made a timely payment in excess of the amount due for the monthly payment on the Account via the LendingPoint website in the amount of $500.

29.     Plaintiff received confirmation of both debits occurring for the payments he initiated and authorized on the Account.

30.    Therefore, Plaintiff made timely payments in both December 2023 and January 2024 and more than satisfied the monthly amount due on the Account.

31.    As such, Plaintiff was not 30 days late in January 2024.

32.    During or about June 2024, Plaintiff completed all payments to LendingPoint on the Account and the Account was closed.

## PLAINTIFF'S COMMUNICATIONS WITH LENDINGPOINT

33.    On or about April 22, 2024, Plaintiff noticed that his account payments were not being properly recorded on his LendingPoint account.

34.    In response, Plaintiff placed a call to Bryant Alfreide, an employee, agent, or representative of LendingPoint, advised him that Plaintiff had made all payments in a timely and full manner on the Account.

35.    Plaintiff was advised that LendingPoint had been experiencing ongoing issues with their records being inaccurate.

36.    In fact, LendingPoint's website, through which Plaintiff conducted payment to his Account, posted a notice on the Login page advising customers that their "account may show information that's inaccurate."

37.    On or about June 25, 2024, Plaintiff was assured by Bryant Alfriede via email correspondence that Plaintiff's account information was being reported accurately.

**PLAINTIFF'S DISPUTES REGARDING THE ACCOUNT
AND LENDINGPOINT, TRANSUNION, AND
EXPERIAN'S DISPUTE RESPONSES**

38.     Prior to June 2024, Plaintiff obtained a copy of his consumer disclosure report from Experian and Transunion.

39.     Plaintiff noticed that Experian and Transunion were both reporting the LendingPoint Account as closed with a 30 day late payment notation in the payment history.

40.     As such, Plaintiff disputed the late payment information to Transunion and Experian and informed them of the erroneous reporting.

41.     Experian received Plaintiff's First June Dispute.

42.     Transunion received Plaintiff's First June Dispute.

43.     Transunion and Experian conveyed Plaintiff's First June Dispute to LendingPoint.

44.     In response to Plaintiff's First June Dispute, Experian verified the LendingPoint account as 30 days late in January 2024.

45.     In response to Plaintiff's First June Dispute, Transunion verified the LendingPoint account as 30 days late in January 2024.

46.     On or about June 19, 2024, Plaintiff sent a letter to Experian, *again* disputing the erroneous information reported directly.

47.     Plaintiff's Second June Dispute included proof of payment on the

Account as well as a statement from a LendingPoint employee regarding the lapse in record accuracy that LendingPoint had been experiencing for a number of months.

48.     Experian received Plaintiff's Second June Dispute.

49.     Experian conveyed Plaintiff's Second June Dispute to LendingPoint.

50.     In response to Plaintiff's Second June Dispute, Experian verified the LendingPoint account as 30 days late in January 2024.

51.     During or about July 2024, Plaintiff disputed the information to Transunion and Experian again and informed them of the erroneous reporting.

52.     More specifically, on or about July 9, 2024, Plaintiff sent a letter directly to Experian disputing the erroneous information.

53.     Plaintiff's July Dispute included proof of payment on the Account as well as a statement from a LendingPoint employee regarding the lapse in record accuracy that LendingPoint had been experiencing for a number of months.

54.     Experian received Plaintiff's July Dispute.

55.     Transunion received Plaintiff's July Dispute.

56.     Transunion and Experian conveyed Plaintiff's July Dispute to LendingPoint.

57.     Following his July Dispute, Plaintiff noticed that his dispute was no longer pending on his Transunion account, so Plaintiff placed a call to Transunion.

58.     Transunion advised Plaintiff that his dispute had been resolved and the

late payment information had been removed.

59.     However, Plaintiff pulled his credit disclosure report as maintained by Transunion, and the late payment remark remained on his credit report.

60.     On or about July 19, 2024, in response to Plaintiff's July Dispute, Experian verified the LendingPoint account as 30 days late in January 2024.

## DAMAGES

61.     Plaintiff retained Swift, Isringhaus, Dubbeld & McEleney, PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

62.     The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against LendingPoint, Transunion, and Experian.

63.     As a result of Defendants' conduct, actions, and inactions, Plaintiff was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, he did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

64.     Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite Plaintiff's exhaustive efforts to convey to LendingPoint that he was not 30 days late on the Account, including providing supporting documentation, Plaintiff must simply endure Defendants' reporting of the Account.

**COUNT ONE**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)**
**(As to LendingPoint Only)**

Plaintiff re-alleges paragraphs one (1) through sixty-four (64) as if fully restated herein and further states as follows:

65.     LendingPoint is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly re-investigate Plaintiff's disputes, failing to review all relevant information regarding the same, and failing to request that Transunion and Experian update and fix the Account on Plaintiff's credit reports and credit file after re-investigating Plaintiff's repeated disputes.

66.     As described above, Plaintiff made all monthly payments on the Account timely and in full for each month, including the month of January 2024.

67.     Despite receiving notice of Plaintiff's disputes from Plaintiff,

Transunion and Experian—including the information and documents referenced above— LendingPoint willfully and/or negligently failed to request that Transunion and Experian update the tradeline associated with the Account and continued to report derogatory, late payment information to Transunion and Experian including significant balances due, and as significantly past-due.

68.    Rather than delete its reporting of the Account after receiving notice of Plaintiff's repeated disputes, LendingPoint inaccurately "verified" or "updated" its derogatory reporting of the Account which ultimately reflected negatively and adversely on Plaintiff's credit reports and credit files as maintained by Transunion and Experian.

69.    LendingPoint's refusal to request that Transunion and Experian update the tradeline associated with the Account was intentionally, willfully, and knowingly done as LendingPoint clearly possessed knowledge that the Account was not late or overdue.

70.    LendingPoint's re-investigations were not conducted in good faith.

71.    LendingPoint's re-investigations were not conducted reasonably.

72.    LendingPoint's re-investigations were not conducted using all information and documents reasonably available to LendingPoint.

73.    As a result of LendingPoint's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from

making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

74.    LendingPoint's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

75.    LendingPoint's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**

Plaintiff re-alleges paragraphs one (1) through sixty-four (64) as if fully restated herein and further states as follows:

76.    Transunion and Experian are each subject to, and each violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or

follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

77.     Transunion and Experian willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Account.

78.     Specifically, despite Plaintiff advising Transunion and Experian that he was not 30 days late in January 2024—Transunion and Experian each continued to report the Account with late payment history, resulting in the Account being reported as a derogatory, negative, or adverse account in Plaintiff's credit reports and credit files.

79.     Further, Transunion and Experian willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in his Transunion and Experian credit reports and credit file.

80.     Such reporting of the Account is false and evidences Transunion's and Experian's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

81.     As a result of Transunion's and Experian's conduct, actions, and

inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

82.    Transunion's and Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

83.    Transunion's and Experian's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

### COUNT THREE:
### FAIR CREDIT REPORTING ACT –
### <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(1)</u>

Plaintiff re-alleges paragraphs one (1) through sixty-four (64) as if fully restated herein and further states as follows:

84.    Transunion and Experian are each subject to, and each violated the

provisions of, 15 United States Code, Section 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit reports and credit files.

85. Specifically, Transunion and Experian each willfully and/or negligently refused to properly re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

86. Overall, Plaintiff's Disputes provided Transunion and Experian with sufficient information allowing Transunion and Experian to identify that the Account was not late or overdue, and therefore, should be updated on Plaintiff's credit reports and credit file as maintained by Transunion and Experian.

87. Transunion and Experian did not request any documents from LendingPoint corroborating information furnished and verified by LendingPoint to Transunion and Experian regarding Plaintiff and the Account in response to any of Plaintiff's Disputes.

88. As such, Transunion's and Experian's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and each failed to subsequently update and remove the inaccurate information in Plaintiff's credit reports and credit files.

89. Such reporting is false and evidences Transunion's and Experian's

failure to conduct reasonable re-investigations of Plaintiff's repeated disputes.

90.  Transunion's and Experian's reinvestigations of Plaintiff's disputes were not conducted reasonably.

91.  Transunion's and Experian's reinvestigations merely copied and relied upon the inaccurate Account information conveyed by LendingPoint.

92.  Transunion's and Experian's reinvestigations of Plaintiff's disputes were not conducted in good faith.

93.  Transunion's and Experian's reinvestigation procedures are unreasonable.

94.  Transunion's and Experian's re-investigations of Plaintiff's disputes were not conducted using all information reasonably available to Transunion and Experian.

95.  Transunion's and Experian's reinvestigations were *per se* deficient by reason of these failures in Transunion's and Experian's reinvestigations of Plaintiff's disputes and the Account.

96.  As a result of Transunion' and Experian's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile

credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

97.    Transunion and Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

98.    Transunion's and Experian's actions in violation of 15 United States Code, Section 1681i(a)(1), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT FOUR:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(4)**

Plaintiff re-alleges paragraph one (1) through sixty-four (64) as if fully restated herein and further states as follows:

99.    Transunion and Experian are each subject to, and each violated the provisions of, 15 United States Code, Section 1681i(a)(4), by failing to review and consider all relevant information received in Plaintiff's disputes.

100.    Transunion's and Experian's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

101.   As a result of Transunion's and Experian's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

102.   Transunion's and Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

103.   Transunion's and Experian's actions in violation of 15 United States Code, Section 1681i(a)(4), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT FIVE:**
**FAIR CREDIT REPORTING ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i(a)(5)**

Plaintiff re-alleges paragraphs one (1) through sixty-four (64) as if fully restated herein and further states as follows:

104.   Transunion and Experian are each subject to, and each violated the provisions of, 15 United States Code, Section 1681i(a)(5), by failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

105.   Specifically, despite Transunion and Experian receiving Plaintiff's Disputes—which proved he did not owe the Alleged Debt—neither Transunion nor Experian updated the Account on Plaintiff's credit reports and credit files.

106.   Instead, Transunion and Experian continued to report the Account in Plaintiff's credit reports and files as belonging to Plaintiff with derogatory, late payment information regarding the Account.

107.   As a result of Transunion's and Experian's conduct, actions, and inactions, Plaintiff suffered damage to his credit reputation and credit worthiness, was deterred from making credit applications as he believed he would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account, did not wish to further damage his credit score with futile credit inquires, and he was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

108.   Transunion's and Experian's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to

Plaintiff as stated herein.

109.   Transunion's and Experian's actions in violation of 15 United States Code, Section 1681i(a)(5), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

    a.    Judgment against LendingPoint, Transunion, and Experian for maximum statutory damages for violations of the FCRA;

    b.    Actual damages in an amount to be determined at trial;

    c.    Compensatory damages in an amount to be determined at trial;

    d.    Punitive damages in an amount to be determined at trial;

    e.    An award of attorney's fees and costs; and

    f.    Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and

their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

/s/ *Jon P. Dubbeld*
**Aaron M. Swift, Esq., FBN 0093088**
**Jordan T. Isringhaus, Esq., FBN 0091487**
**Jon P. Dubbeld, Esq., FBN 105869**
**Sean E. McEleney, Esq., FBN 125561**
11300 4th Street North, Suite 260
St. Petersburg, FL  33716
Phone: (727) 755-3676
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
jdubbeld@swift-law.com
smceleney@swift-law.com
*Counsel for Plaintiff*